## B. B. WILSON v. MARY WILSON ET AL.

Decided March 12, 1904.

**1.—Evidence—Reading Deposition—Witness at Trial.**

Where plaintiff was present and testified at the trial, and defendant's counsel, in cross-examination and for the purpose of impeaching her, interrogated her as to certain answers she had made in a deposition of hers on file in the case, it was admissible for her to read in evidence, from the deposition, her answer to one of the interrogatories therein.

**2.—Same—Rule Stated—Judicial Discretion.**

The matter of permitting the deposition of a witness to be read in evidence after he has testified on the trial rests largely in the discretion of the trial court, and its action therein will not be ground for reversal unless it is made to appear that such discretion has been abused to appellant's injury.

**3.—Trespass to Try Title—Improvements and Rental Value.**

In trespass to try title and·cancel a deed where the undisputed evidence showed that the rental value of the premises during the period of defendant's possession and use thereof exceeded the value of his improvements, there was no basis upon which the jury could have predicated a verdict in his favor for the value of the improvements, and the court did not err to his prejudice in omitting to submit such issue.

**4.—Same—Delivery of Deed.**

In such action, while counsel for defendant was arguing the law to the court, the court stated that it did not desire to hear argument on the question of the delivery of the deed, as the jury would be charged, as an undisputed fact, that the deed was delivered. Such charge was not given, but the delivery of the deed appears to have been treated by the court and all the parties litigant as an established fact. Held, that defendant was not injured in being misled and deprived by the remark of the court of the benefit of an argument to the jury on the matter of the delivery of the deed.

**5.—Same—Cancellation of Deed for Fraud—Evidence.**

The fact that the deed from plaintiff to defendant, her son, was absolute on its face and was delivered to defendant, would not prevent plaintiff, under proper allegations, from showing that the agreement was that it was not to take effect until plaintiff's death, and its consideration was to be that the grantee would support her during her life, and that she was to retain control of the premises, and that she was unable to read, and signed the deed relying upon the grantee having prepared it in accordance with the agreement. There was no assent of the grantor's mind to the deed that was executed, absolute in terms and reciting the consideration to be one dollar and love and affection.

Appeal from the District Court of Wood. Tried below before Hon. R. W. Simpson.

*M. D. Carlock,* for appellant.

*D. W. Crow* and *W. B. Teagarden,* for appellees.

TALBOT, ASSOCIATE JUSTICE.—This suit was instituted by appellees, Mary Wilson and others, on the 2d day of October, 1902, in the form of an action of trespass to try title and to cancel a deed made by the said Mary Wilson to appellant on January 21, 1901, for the land in controversy and to recover rents. Subsequently all the plaintiffs, except appellee and Mrs. Dora Thompson, who, joined by her husband, claimed only two acres of the land, dismissed their suit, and the cause proceeded to trial with these remaining plaintiffs. Appellant

disclaimed any title to or interest in the two acres claimed by Mrs. Thompson, and the only controversy on the trial was between appellee, Mary Wilson, and appellant, B. B. Wilson. Appellant answered by general demurrer, plea of not guilty, and alleged improvements in good faith. The trial resulted in a verdict and judgment in favor of appellee, from which this appeal is prosecuted. The evidence is conflicting, but we believe the following conclusions are warranted thereby:

Appellee was the mother of appellant, and the widow of Bryant Wilson, deceased. The land in controversy was the community property of appellee and Bryant Wilson, and was their homestead at the date of the latter's death. Appellant had resided on the land with his father and mother before the death of his father, and continued to so reside with his mother after his father's death. Mrs. Dora Thompson and the other plaintiffs were the children and grandchildren of Mary and Bryant Wilson. On January 21, 1901, appellee executed and caused to be delivered to appellant a deed purporting to convey to him the whole of the land in controversy and to take immediate effect. Before the execution of this deed appellee agreed with appellant to give him her one-half of the land in controversy anfl to make him a deed therefor, in consideration that he would maintain and support her during the remainder of her life. But it was further agreed that said deed was not to become operative and the title to the land pass and vest in appellant until the death of appellee, and that during her lifetime she should have the management and control of the premises. With this understanding appellee directed appellant to have a deed prepared incorporating therein the terms of their agreement. Appellant caused the deed, dated January 21, 1901, to be prepared, and appellee signed and acknowledged its execution, thinking and believing the same was in accordance with their previously made agreement. The deed, however, was not in keeping with that agreement, but on the contrary was an absolute deed on its face, purporting to convey the entire land and to pass and vest in appellant the present title thereto, in consideration of love and affection and the sum of one dollar. The deed was a general warranty for all the land, and did not contain stipulations to the effect that appellee was to retain the control and management thereof during her life; that appellant was to maintain and support her, and that the title to said land was not to pass to appellant until the death of appellee.

Appellant had the deed recorded immediately after its execution and turned it over to appellee, with instructions to keep it among her other papers until her death, but she could not read and did not know its terms and contents and did not know that it failed to contain the provisions agreed upon between her and appellant until a short time before the institution of this suit. Appellee was very old, feeble and illiterate, and the deed was not read or its contents made known to her by the notary public who took her acknowledgment thereto, or by

anyone else until she left appellant's house. Some time after the execution of the deed appellee became dissatisfied with the treatment she was receiving at the hands of appellant's wife and left his house and went to her daughter's, Mrs. Dora Thompson's, to reside. She carried the deed in question with her, and her daughter read the deed to her and explained its contents. This was the first time she knew the agreement made with her son, the appellant, had not been incorporated in the deed. Upon ascertaining the nature and effect of the deed appellee brought this suit.

*Opinion.*—It appears that appellee's deposition had been taken prior to the trial, and she proposed to read in evidence her answer to one of the interrogatories propounded to her, after she had testified orally. To this appellant objected upon the ground that the witness was present in court and her deposition for that reason inadmissible. The objection was overruled and this action of the court is made the basis of appellant's first assignment of error. The objection is not well taken. The practice of permitting the deposition of a witness to be read in evidence after such witness has testified on the trial is left very largely to the discretion of the trial court, and a ruling adversely to the party objecting will afford no ground for a reversal of the judgment unless it is made to appear that such discretion has been abused to his injury. Schmick v. Noel, 64 Texas, 406. Besides, in this case while the appellee was on the stand appellant's counsel interrogated her as to certain answers and statements she had made in the deposition, with a view to impeach her by showing her statements made on the witness stand were contradictory of those made on the same subject in the deposition. It was then appellee offered the answer objected to, which related to the matters on which she had been interrogated by appellant's counsel for the purpose of sustaining the witness by placing before the jury all that was testified to on the same subject. This she was entitled to, and there was no error in the court's ruling.

The court did not err in omitting to submit the question of improvements alleged to have been made by the appellant in good faith upon the land in controversy, or to give appellant's special charge requested in relation thereto. The undisputed evidence showed that the rental value of the premises during the period of appellant's possession and use thereof exceeded the value of appellant's improvements. There was no evidence of the value, at the time of trial, of such improvements as had been made before the filing of the suit. Neither was there any evidence from which the jury could determine to what extent such improvements had enhanced the value of the land, or the present value of the premises without the improvements. The burden of proof was upon the appellant to establish by the evidence the questions of value referred to, and having failed to do so, there was no basis in the evi-

dence upon which the jury could have predicated a verdict for improvements.

Appellant's sixth assignment of error complains of the failure of the court to charge the jury to the effect that the undisputed evidence showed that the deed dated dated January 21, 1901, had been delivered to appellant. The ground of complaint is, that while counsel for appellant was arguing the law of the case to the court, the court stated to him that it did not desire to hear any argument on the question of the delivery of the deed; that the court was going to charge the jury as an undisputed fact that the deed referred to was delivered. It is urged that counsel was misled by this action of the court and his client deprived of the benefit of an argument to the jury upon that question to his prejudice.

We fail to see how appellant was injured by reason of the matter complained of. The undisputed evidence showed that the deed, as a fact, had been delivered to appellant. It was not submitted as an issue to be passed upon and decided by the jury. There was no special charge requested upon the subject, and it seems to have been treated by the court and all parties to the litigation as an established fact. It does not appear, and it is not at all likely, that the failure to charge as indicated by the court he would do, influenced the jury in any degree to the injury of appellant.

Complaint is made of the following paragraph of the court's charge: "If you find that Mrs. Mary Wilson and her son B. B. Wilson mutually agreed between themselves that she would give to B. B. Wilson one-half of the land in controversy upon her death, and if you find that on the 21st day of January, 1901, the plaintiff Mrs. Mary Wilson, believing and thinking that the deed introduced in evidence of date January 21, 1901, conveyed the half of the land in controversy to B. B. Wilson, the title to same to pass to said B. B. Wilson only at her death, and so believing she, in ignorance of the fact that the deed passed the title to the half of the land at once to B. B. Wilson, you will find for plaintiff Mrs. Mary Wilson."

The ground of complaint is, that the deed of date January 21, 1901, is absolute on its face and was delivered to the grantor named therein, and under such circumstances evidence to show that it was the understanding of the parties thereto that the deed should not take effect until after the death of the grantor, was inadmissible, and the issue should not have been submitted to the jury.

We are of opinion that under the allegations and facts disclosed by the record appellant's contention should not be sustained. It is true the deed on its face was absolute and sufficient to convey unconditionally the land in controversy and to vest in appellant the present title thereto. But appellee was ignorant and unable to read the deed, and did not know the contents thereof at the time of its execution and delivery. She had the utmost confidence in appellant, and believed

the deed contained the real terms of their contract and in all respects complied with their agreement. She was willing to convey her interest in the land to appellant, provided the deed did not become operative and the title pass until her death; and provided she remained in control of the property and appellant supported her. To this her mind assented, but not to the terms of the deed sought to be canceled.

It seems to be well established that it is essential to the validity of a deed that the mind of the vendor comprehends and assents to its terms; that if the vendor was unable to read and was misled as to its terms, he is entitled to a decree canceling the deed. Perez v. Everett, 73 Texas, 431; Harding v. Blackshear, 60 Texas, 132. The case of McLendon v. Brockett, 32 Texas Civ. App., 150, 7 Texas Ct. Rep., 288, is believed not to be in point. In that case it was an uncontroverted fact that the grantor executed the deed with full knowledge of its terms, and it was not alleged or attempted to be shown that fraud was practiced either in the preparation or execution of the deed or in obtaining the possession thereof. In the case at bar it is alleged and shown that the deed in question was prepared by or at the instance of appellant; that other and materially different terms than those agreed upon were engrafted on the contract, of which appellee had no knowledge and to which she did not assent. We conclude the issue was properly submitted to the jury, and that their verdict is sustained by the evidence.

Other assignments of error complaining of the charge of the court are believed to be without merit and will be overruled. Finding no reversible error in the record, in so far as raised by the assignments and propositions thereunder, the judgment of the court below is therefore affirmed.

*Affirmed.*